BRIAN M. LEDGER  (SBN:  156942)
bledger@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone:  (619) 696-6700
Facsimile:  (619) 696-7124

Attorneys for Defendant
GORILLA MIND, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ALPHONSO HABBABA,

                   Plaintiffs,

    vs.

GORILLA MIND, LLC, and DOES 1-500,

                   Defendants.

CASE NO. **'24CV0875 L    SBC**

**DEFENDANT GORILLA MIND, LLC'S NOTICE OF REMOVAL OF CASE FROM STATE COURT**

**[28 U.S.C. §§ 1332(A), 1441, 1446]**

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

    **PLEASE TAKE NOTICE** that Gorilla Mind, LLC, ("Gorilla Mind" or "Defendant") hereby removes this action to the United States District Court for the Southern District of California. :

## I.   PRELIMINARY STATEMENT

    1.    Gorilla Mind removes this action under 28 U.S.C. § 1441 and 28 U.S.C. § 1446 from the Superior Court of the State of California, County of San Diego to the United States District Court for the Southern District of California. Gorilla Mind is removing it because this Court has original subject matter jurisdiction over it under 28 U.S.C. § 1332.

    2.    Plaintiff Alphonso Habbaba (sometimes, "Plaintiff") filed suit against Gorilla Mind in the Superior Court of the State of California, County of San Diego on March 11, 2024. The complaint alleges six claims: (1) Negligence; (2) Strict Products Liability – Manufacturing

1   Defects; (3) Strict Products Liability – Design Defect; (4) Strict Products Liability – Failure to

2   Warn; (5) Breach of Implied Warranties; and (6) Breach of Express Warranties. Each stems from

3   injuries that Habbaba's alleges to have suffered after ingesting supplements manufactured and

4   sold by Gorilla Mind. More specifically, he alleges Gorilla Mind's products having caused a

5   "drug-induced liver failure" for which he received a liver transplant, and from which he suffered

6   post-surgical complications. Habbaba's complaint prays for *inter alia* past and future medical

7   expenses, past and future loss of earnings, "other economic loss," non-economic damages,

8   litigation costs, and attorney's fees.

9          3.     Gorilla Mind's removal is based on the Court having diversity jurisdiction since

10  Plaintiff and Defendant are citizens of different states, and the amount in controversy is satisfied.

**II.    THE COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION BECAUSE THERE IS COMPLETE DIVERSITY AND THE REQUIREMENT FOR THE AMOUNT IN CONTROVERSY IS SATISFIED.**

**A.     There Is Complete Diversity of Citizenship**

**1.     Plaintiff is a Citizen of California Because He Resides in It.**

15         4.     "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v.*

16  *Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner—*

17  *Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity jurisdiction,

18  citizenship is determined by the individual's domicile at the time that the lawsuit is filed.

19  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*,

20  797 F.2d 747, 750 (9th Cir. 1986).

21         In his Complaint, Habbaba alleges himself as "a resident of Spring Valley, California."

22  Exh. A,  Pl. Compl. ¶ 1. He is therefore a citizen of California.

**2.     Defendant is a citizen of Idaho Because It is the State of Its Incorporation and Principal Place of Business.**

25         5.     For diversity purposes, a corporation is a citizen of "the state by which it has been

26  incorporated and of the state where it has its principal place of business." U.S.C. §1332(c)(1). A

27  corporation's principal place of business is "the place where a corporation's officers direct,

28  control, and coordinate the corporation's activities," 116., the "nerve center" of the business.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   _Hertz Corp. v. Friend_, 130 S.Ct. 1181, 1192 (2010).

2       6.    As Plaintiff's complaint correctly alleges, Gorilla Mind was formed as a limited

3   liability company in the State of Idaho, where it also has its principal place of business. Pl.

4   Compl. ¶ 2.

5           **3.    Doe Defendants Are Irrelevant for Purposes of Removal.**

6       7.    The citizenship of a defendant sued under a fictitious name is disregarded under

7   28 U.S.C. § 1441(b)(1) so Plaintiff having included "Does 1-500" is inconsequential on Gorilla

8   Mind's ability to remove. See also _Newcombe v. Adolf Coors Co._, 157 F.3d 686, 690-91 (9th Cir.

9   1998) (defendants sued under fictitious names are disregarded for removal); _Soliman v. Philip_

10   _Morris, Inc._, 311 F.3d 966, 971 (9th Cir. 2002). Accordingly, complete diversity exists under 28

11   U.S.C. § 1441(b)(2) because "none of the parties in interest properly joined and served as

12   defendants is a citizen of the State in which [this] action is brought."

13       **B.    The Amount In Controversy Requirement Is Met.**

14       8.    The amount in controversy is met because this Notice of Removal plausibly

15   alleges that it exceeds $75,000 since Habbaba alleges severe and permanent injuries and

16   damages, including a serious surgical procedure. To determine the amount in controversy, a

17   court first considers whether it is "facially apparent" from the complaint that the jurisdictional

18   amount is in controversy, i.e., that the amount exceeds the threshold. _Abrego v. Dow Chem. Co._,

19   443 F.3d 676, 690 (9th Cir. 2006) (citation omitted). If not facially apparent, the court considers

20   whether the notice of removal plausibly alleges that the amount exceeds the threshold. See _Dart_

21   _Cherokee Basin Operating Co. v. Owens_, 574 U.S. 81, 87-88 (2014) A notice of removal "need

22   not contain evidentiary submissions." Id. 84. Evidence showing the amount in controversy is

23   required "only when the plaintiff contests, or the court questions, the defendant's allegation." Id.

24   at 89

25       9.    In measuring the amount in controversy, "a court must assume that the allegations

26   of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims

27   made in the complaint." _Kenneth Rothschild Trust v. Morgan Stanley Dean Witter_, 199 F. Supp.

28   2d 993, 1001 (C.D. Cal. 2002) (internal quotations and brackets omitted). The amount-in-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

controversy requirement may be satisfied by claims of general and specific damages, punitive damages, and attorney's fees (if authorized by statute or contract). _Kroske v. U.S. Bank Corp._, 432 F.3d 976, 980 (9th Cir.2005); _Gibson v. Chrysler Corp._, 261 F.3d 927, 946 (9th Cir.2001).

10.     Courts in this circuit and others have repeatedly found the amount in controversy requirement is satisfied where the plaintiff does not specify a damages amount but alleges permanent injuries or surgery. See, e.g., _Campbell v. Bridgestone/Firestone, Inc._, 2006 WL 707291, at *3 (E.D. Cal. Mar. 17, 2006) (amount in controversy satisfied where plaintiff alleged head trauma, a broken arm, broken wrist, a deep laceration to his lower leg, and sought damages for wage loss, property loss, hospital and medical expenses, and loss of earning capacity); _Hammarlund v. C.R. Bard, Inc._ (C.D. Cal., Oct. 2, 2015, No. 215CV05506SVWJEM) 2015 WL 5826780, at *1–2 (amount in controversy satisfied where the plaintiff alleged inter alia kidney damage that required surgery, a four-day hospital stay, and significant "mental and physical pain and suffering") ; _Voss-Curry v. Crown Equipment Corporation_ (W.D. Wash., Sept. 14, 2022, No. 2:22-CV-01062-BJR) 2022 WL 4234099, at *3 (amount in controversy satisfied where the plaintiff claimed ongoing physical and psychological distress and a permanent injury.) _Bailey v. J.B. Hunt Transp., Inc._, No. 06-240, 2997 WL 764286, at *6 (E.D. Pa. Mar. 8, 2007) (amount in controversy satisfied where complaint alleged a "litany of serious, permanent injuries," "surgeries and treatments," and "the alleged permanent impairment of [the] ability to enjoy life's activities"); _McCoy v. Gen. Motors Corp._, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002) ("courts have routinely held that when plaintiffs allege serious, permanent injuries and significant medical expenses, it is obvious from the face of the complaint that the plaintiffs' damages exceeded the jurisdictional amount").

11.     Here, Plaintiff alleges that after using Gorilla Mind's products, he experienced jaundice, discolored urination, and persistent nausea. Pl. Compl. ¶ 11. Because of the purported symptoms, he alleges visiting the emergency room where blood work showed "markers for liver failure." Id. He further alleges having received a liver transplant that later caused multiple "post-surgical complications." Id. ¶¶ 12-13. Plaintiff alleges that the complications required "additional invasive tests, medications, and time in the hospital." Id. ¶ 13. The medical team recommended

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Defendant Gorilla Mind, LLC's Notice of Removal of Case From State Court

1   the liver transplant, he alleges, after performing diagnostic testing and concluding that he had

2   suffered from a drug-induced liver failure. Id. ¶11

3         12.    Plaintiff's injuries, he alleges, are "severe and permanent," and "will continue in

4   the future." Pl. Compl. ¶ 34. He alleges having "endured substantial conscious pain and

5   suffering, both physical and emotional in nature" and incurring "significant expenses for medical

6   care and treatment, suffered lost wages and earnings," along with "severe pecuniary loss." Id.

7         13.    Plaintiff prays inter alia for past and future medical expenses, past and future loss

8   of earnings, and "other economic loss." Pl. Compl. p. 21:5-7. He also seeks non-economic

9   damages, including compensation for "physical pain and discomfort" and "fright, nervousness,

10  anxiety, worry, and apprehension." Id. 8-10. Lastly, he seeks punitive damages, litigation costs,

11  and attorney's fees. Id. 8-14.

12        14.    Because Plaintiff alleges severe and permanent injuries that include liver failure, a

13  subsequent liver transplant, multiple complications, and significant medical expenses for which

14  he seeks recovery, Gorilla Mind has plausibly alleged that the amounts he seeks satisfies the

15  amount in controversy required under 28 U.S.C. § 1332.

16  **III.    THIS REMOVAL IS TIMELY.**

17        15.    On April 26, 2024, Plaintiff served the registered agent for Gorilla Mind with the

18  Summons, Civil Case Cover Sheet, and Complaint. Gorilla Mind's removal is therefore timely

19  under 28 U.S.C. § 1446(b) and 28 U.S.C. § 1453 and Fed. R. Civ Proc. 6(a)(1) (removal is

20  timely if filed within thirty (30) days of service of the Summons, Civil Case Cover Sheet, and

21  Complaint upon the defendant). See also *Kyle v. Campbell Soup Co.*, 28 F.3d 928, 929 (9th Cir.),

22  cert. denied, 115 S.Ct. 185 (1994). The Complaint, Civil Cover Sheet, and Summons (all

23  attached as Exhibit A) constitute all process, pleadings, and orders thus far filed in this action.

24  **IV.    VENUE IS PROPER**

25        16.    Venue lies in the Southern District of California under 28 U.S.C. sections 84(c),

26  1441(a), and 1446(a) because Plaintiff originally brought the State Court Action in the Superior

27  Court of the State of California, County of San Diego.

28

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Defendant Gorilla Mind, LLC's Notice of Removal of Case From State Court

## V.    <u>THE OTHER PREREQUISITES FOR REMOVAL ARE SATISFIED.</u>

17.    Gorilla Mind will promptly serve Plaintiff with this Notice of Removal and file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

18.    Gorilla Mind has sought no similar relief.

19.    The prerequisites for removal under 28 U.S.C. §§ 1332(a), 1441 and 1446 have been met.

20.    Because this Court has original jurisdiction under the provisions of 28 U.S.C. §1332(a), removal of this action is proper under 28 U.S.C. § 1441.

21.    If any question arises as to the propriety of this removal, Gorilla Mind requests the opportunity to present additional briefing and evidence and oral argument to support the removal.

WHEREFORE, Gorilla Mind prays that the Court remove this civil action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Southern District of California.

Dated: May 17, 2024                 GORDON REES SCULLY MANSUKHANI LLP

By:     <u>*/s/ Brian M. Ledger*</u>
          Brian M. Ledger
          Attorney for Defendant
          GORILLA MIND, LLC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# EXHIBIT "A"

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**03/11/2024** at 08:43:08 AM

Clerk of the Superior Court
By Eva Noriega,Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

GORILLA MIND, LLC, and DOES 1-500,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ALPHONSO HABBABA

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Diego Superior Court, Hall of Justice,<br><br>330 W. Broadway, San Diego, CA 92101 | CASE NUMBER:<br>*(Número del Caso):*<br><br>37-2024-00011438-CU-PL-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sean Higgins, Anne Andrews, Andrews & Thornton, 4701 Von Karman Ave., Suite 300, Newport Beach, CA 92660; (949) 748-1000

| DATE: 03/12/2024 | Clerk, by | *E. Noriega* | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | E. Noriega | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

| [SEAL] | **NOTICE TO THE PERSON SERVED:** You are served |
|---|---|
| | 1. ☐ as an individual defendant. |
| | 2. ☐ as the person sued under the fictitious name of *(specify):* |
| | 3. ☒ on behalf of *(specify):* Gorilla Mind, LLC |
| | under: ☒ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor) |
| | ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee) |
| | ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person) |
| | ☐ other *(specify):* |
| | 4. ☐ by personal delivery on *(date):* |

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

1   ANNE ANDREWS (Bar No. 103280)
    aandrews@andrewsthornton.com
2   SEAN T. HIGGINS (Bar No. 266888)
    shiggins@andrewsthornton.com
3   ROBERT S. SIKO (Bar No. 312856)
4   rsiko@andrewsthornton.com
    **ANDREWS & THORNTON**
5   4701 Von Karman Ave, Suite 300
    Newport Beach, California 92660
6   Telephone:         (949) 748-1000
7   Facsimile:         (949) 315-3540

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**03/11/2024** at 08:43:08 AM
Clerk of the Superior Court
By Eva Noriega, Deputy Clerk

8   *Attorneys for Plaintiff*

9        **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

10                 **COUNTY OF SAN DIEGO**

11

12   **ALPHONSO HABBABA,**                    **CASE NO.:** 37-2024-00011438-CU-PL-CTL

13                    **Plaintiff,**          **COMPLAINT FOR DAMAGES AND**
                                              **DEMAND FOR JURY TRIAL**
14            vs.

15   **GORILLA MIND, LLC, and DOES 1-500,**   1. **NEGLIGENCE**
                                              2. **STRICT PRODUCTS LIABILITY**
16                    **Defendants.**            **– MANUFACTURING DEFECT**
                                              3. **STRICT PRODUCTS LIABILITY**
17                                               **– DESIGN DEFECT**
                                              4. **STRICT PRODUCTS LIABILITY**
18                                               **– FAILURE TO WARN**
                                              5. **BREACH OF IMPLIED**
19                                               **WARRANTIES**
                                              6. **BREACH OF EXPRESS**
20                                               **WARRANTIES**

21

22

23        Plaintiff ALPHONSO HABBABA, by and through his Attorneys of record, brings this

24   action against defendants GORILLA MIND, LLC and DOES 1-500 and alleges on information

25   and belief, except for information based on personal knowledge, as follows:

26

27

28

                                        1

**PARTIES**

1.     Plaintiff, ALPHONSO HABBABA is, and at all times herein alleged was, a resident of Spring Valley, California, County of San Diego.

2.     Defendant GORILLA MIND, LLC (hereinafter "GORILLA MIND"), is and at all times herein alleged was, a limited liability company formed in and with its principal place of business in Boise, Idaho.

3.     GORILLA MIND is and at all times herein alleged was, regularly engaged in the business of licensing, manufacturing, formulating, packaging, distributing, and/or selling, either directly or indirectly, through third parties or related entities, non-prescription dietary supplements for sale to, and use by, members of the general public, and as a part of their business, said Defendant, directly or indirectly was and is engaged in the manufacturing/ formulating/ packaging/ distributing/ selling of purported nutritional/dietary supplements, including "a2 AM Stim-Based Fat Loss Formula" and "cAMP PM Stimulant Free Fat Loss Formula" (hereinafter, collectively referred to as "GORILLA PRODUCTS") in interstate commerce and in California, which Plaintiff purchased and ingested as alleged herein.

4.     On information and belief, GORILLA MIND at all relevant times was a multi-level marketing company that sold through authorized marketers in the state of California and sold GORILLA PRODUCTS directly to Plaintiff, located in the state of California, through its website and mailed GORILLA PRODUCTS to Plaintiff who was located in and consumed said products in California.

5.     The true names or capacities, whether individual, corporate, or otherwise, of Defendants DOES 1 through 500, inclusive, are unknown to Plaintiff who is therefore ignorant of the true names and sues said Defendants by such fictitious names. Plaintiff believes and alleges that each of the Defendants designated herein by fictitious names is in some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiff as alleged herein. At all times hereinafter alleged, "DEFENDANTS" or "All DEFENDANTS" include named Defendant, GORILLA MIND, as well as Defendants DOES 1 through 500, inclusive.

2

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

**JURISDICTION AND VENUE**

6.      Plaintiff alleges an amount in controversy in excess of the minimal jurisdictional limits of this Court.

7.      Venue in this Court is proper because the contract to purchase GORILLA PRODUCTS was entered into in this County, the consumption and injuries to Plaintiff alleged herein occurred in this County, and the dispute otherwise arose in this County.

8.      This Court has personal jurisdiction over DEFENDANTS who purposefully directed the sale and shipment of GORILLA PRODUCTS to Plaintiff, a resident of California, and who purposefully availed themselves of the privilege of conducting business in the state of California. Plaintiff's injuries directly arose out of the sale and shipment of GORILLA PRODUCTS by DEFENDANTS to Plaintiff. As such, this Court's exercise of personal jurisdiction over DEFENDANTS comports with fair play and substantial justice.

**FACTUAL BACKGROUND**

*Plaintiff*

9.      Before purchasing GORILLA PRODUCTS, Plaintiff was exposed to advertising and marketing by DEFENDANTS. Plaintiff relied on the representations and warranties from DEFENDANTS made therein in making his decision to purchase GORILLA PRODUCTS, believing they would be safe and effective for their advertised use and relying on the expertise of DEFENDANTS. Had Plaintiff known GORILLA PRODUCTS were not safe and not effective for their advertised use, he would not have purchased them and would not have used them.

10.     Plaintiff used GORILLA PRODUCTS as directed in the labeling as follows:

- "a2 AM Stim-Based Fat Loss Formula" in or about August 2022 until in or about October 2022.

- "cAMP PM Stimulant Free Fat Loss Formula" occasionally beginning in or about October 2022 and regularly beginning in or about July 2023 or August 2023 until his injury in or about early September 2023.

11.     In or about early September of 2023, Plaintiff began to notice signs of jaundice, discolored urination, and persistent nausea. Concerned about the symptoms, he reported to the

3

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

Emergency Room on or about September 10, 2023. Bloodwork showed extremely elevated AST and ALT levels, both of which are markers for liver failure. The medical team took a detailed history and performed appropriate diagnostic tests. After a thorough evaluation, the medical team diagnosed that Plaintiff had drug-induced liver failure most likely caused by his use of GORILLA PRODUCTS.

12.    Following the recommendations of the medical team, Plaintiff consented to a liver transplant, which was performed on October 6, 2023.

13.    A liver transplant requires the use of medications with serious health trade-offs and adverse effects, including immunosuppressant drugs and steroids. Unfortunately, Plaintiff endured a number of post-surgical complications indicative of some degree of rejection of the transplanted liver. These complications required additional invasive tests, medications, and time in the hospital.

*History of Dietary Supplements Containing Green Tea Extract/EGCG*

14.    Green tea is a tea made from camellia sinensis leaves. It contains many phytochemicals, including polyphenol epigallocatechin-3-gallate (EGCG) as well as numerous other polyphenols, which together account for about 30% of the total dry weight of green tea leaves. Although EGCG is the most abundant polyphenol in green tea, it is present in small amounts. Thus, green tea is also extracted. Commercial preparations of green tea extracts use various extraction techniques, although alcohol is frequently used as a solvent. Regardless of technique, generally, as an extract, EGCG is the most abundant polyphenol at about 10%.

15.    However, GORILLA PRODUCTS each contain 125 mg Green Tea Extract per gel capsule. Given the dosing instructions of 8 capsules per day, and as reflected by the images below, the DEFENDANTS' recommended daily dose of green tea extract in GORILLA PRODUCTS is an astounding 1,000 mg.

16.    However, DEFENDANTS' use of green tea extract is even worse than the mere numbers suggest. Although EGCG is the most abundant polyphenol, it is present in green tea leaves at only 7% and extracts at 10%. As a result, the amount of raw green tea leaves necessary to extract the EGCG in each pill of GORILLA PRODUCTS would be large, likely meaning DEFENDANTS sold synthetic EGCG in GORILLA PRODUCTS.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

17.     Under California law, the use of synthetic ingredients like EGCG in dietary supplements is illegal. The reason is that synthetic copies of natural ingredients are not always the same as their natural counterparts, may present different risk profiles, and, as evident here, are often present in much larger amounts than those found in nature. The dietary supplement industry was warned of such back in 2011 and it has long since been known in the industry. DEFENDANTS knew that use of synthetic EGCG was unlawful.

18.     While green tea is a drink that has been consumed around the world for centuries, about 20 years ago dietary supplement companies starting selling products marketed for weight loss not with natural green tea leaves, but the extract of green tea, with synthetic EGCG alone or both. In 1999, reports began to appear in literature of liver toxicity caused by products containing green tea extract.

19.     In April 2003, the French and Spanish regulatory authorities suspended the market authorization of a weight-loss supplement, Exolise, containing green tea extract following 13 reports of liver injury, including 4 serious injuries and a liver transplantation.

20.     In 2008, an expert committee to U.S. Pharmacopeia reviewed 34 case reports of liver injuries from green tea products. All were categorized as possibly or probably caused by the green tea products.

21.     On May 1, 2009, FDA warned consumers to stop using a line of dietary supplements marketed as a weight-loss product called Hydroxycut because they were associated with serious health problems. Hydroxycut contained EGCG at far less than the dose of SUBJECT PRODUCT. FDA noted it had received numerous adverse event reports, including 23 reports of liver toxicity, ranging from mild liver dysfunction to liver failure and transplantation. A case series from University of Southern California revealed 17 additional cases of liver toxicity from Hydroxycut. The company marketing Hydroxycut eventually agreed to a full recall of the entire line of products.

22.     Since the late 1990s there have been scores of cases reports in the scientific and medical literature of acute liver injury caused by green tea extracts contained in dietary supplements. The Drug-Induced Liver Injury Network (DILIN), the premier expert panel of

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  hepatologists reviewing cases of drug and herbal-induced liver injury, opine that EGCG is

2  hepatotoxic.

3  *Gorilla Mind Products*

4      23.    GORILLA PRODUCTS are labeled as a "Fat Loss Formula" and a "Stimulant Free

5  Fat Loss Formula". They are manufactured for, advertised, distributed, marketed, and sold by

6  DEFENDANTS to Plaintiff. An advertisement displaying a picture of the front labels of

7  GORILLA PRODUCTS is reproduced below:



22      24.    It is well established by reliable scientific evidence that Green Tea extracts can

23  cause liver injury. Though drinking traditional green tea has not been shown to cause liver injury,

24  green tea extracts have been reliably shown to cause hepatotoxic liver injury in susceptible users.

25  Each of the GORILLA PRODUCTS contained synthetic EGCG as well as multiple extracts that

26  are metabolized in the liver, including, coleus forskhoklii extract ("Forskolin"), and grains of

27  paradise seed extract ("Paradoxine"). An image of the ingredient label for each GORILLA

28  PRODUCTS is reproduced below:

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  ///
2  ///
3  ///
4  ///
5  ///
6  ///
7  ///

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## Supplement Facts

Serving Size 2 Capsules
Servings per container 60

| 2 Capsules | Amount per serving | %DV | 4 Capsules | Amount per serving | %DV |
|---|---|---|---|---|---|
| Naringin | 300mg | † | Naringin | 600mg | † |
| Hesperidin | 280mg | † | Hesperidin | 560mg | † |
| (Citrus Bioflavonoids standardized to 90% Hesperidin) | | | (Citrus Bioflavonoids standardized to 90% Hesperidin) | | |
| Green Tea Extract | 250mg | † | Green Tea Extract | 500mg | † |
| (standardized to > 98% Polyphenols, > 80% Catechins, > 50% EGCG, < 2% Caffeine) | | | (standardized to > 98% Polyphenols, > 80% Catechins, > 50% EGCG, < 2% Caffeine) | | |
| Forskolin | 125mg | † | Forskolin | 250mg | † |
| (Coleus Forskohlii Extract standardized to 20% Forskolin) | | | (Coleus Forskohlii Extract standardized to 20% Forskolin) | | |
| Paradoxine® | 25mg | † | Paradoxine® | 50mg | † |
| (Grains Of Paradise Seed Extract standardized to 12.5% 6-Paradol) | | | (Grains Of Paradise Seed Extract standardized to 12.5% 6-Paradol) | | |

† Daily Value Not Established

**Other Ingredients:** Gelatin (capsules), Titanium Dioxide, FD&C Yellow #6, FD&C Red #3, Silicon Dioxide, Magnesium Stearate

# a2AM STIM-BASED FAT LOSS FORMULA

## Supplement Facts

Serving Size 2 Capsules
Servings per container 60

| 2 Capsules | Amount per serving | %DV | 4 Capsules | Amount per serving | %DV |
|---|---|---|---|---|---|
| Naringin | 300mg | † | Naringin | 600mg | † |
| Hesperidin | 280mg | † | Hesperidin | 560mg | † |
| (Citrus Bioflavonoids standardized to 90% Hesperidin) | | | (Citrus Bioflavonoids standardized to 90% Hesperidin) | | |
| Green Tea Extract | 250mg | † | Green Tea Extract | 500mg | † |
| (standardized to ≥ 98% Polyphenols, ≥ 80% Catechins, > 50% EGCG, < 2% Caffeine) | | | (standardized to ≥ 98% Polyphenols, ≥ 80% Catechins, > 50% EGCG, < 2% Caffeine) | | |
| Caffeine Anhydrous | 150mg | † | Caffeine Anhydrous | 300mg | † |
| N-Phenethyl Dimethylamine Citrate | 150mg | † | N-Phenethyl Dimethylamine Citrate | 300mg | † |
| Forskolin | 125mg | † | Forskolin | 250mg | † |
| (Coleus Forskohlii Extract standardized to 20% Forskolin) | | | (Coleus Forskohlii Extract standardized to 20% Forskolin) | | |
| Paradoxine® | 25mg | † | Paradoxine® | 50mg | † |
| (Grains of Paradise Seed Extract standardized to 12.5% 6-Paradol) | | | (Grains of Paradise Seed Extract standardized to 12.5% 6-Paradol) | | |
| Theophylline | 20mg | † | Theophylline | 40mg | † |
| Isopropylnorsynephrine | 12.5mg | † | Isopropylnorsynephrine | 25mg | † |
| Bioperine® (Black Pepper Fruit Extract) (standardized to 95% Piperine) | 2.5mg | † | Bioperine® (Black Pepper Fruit Extract) (standardized to 95% Piperine) | 5mg | † |
| Rauwolscine (Rauwolfia Vomitoria Root Extract) (std. Min 90% Alpha Yohimbine) | 1.5mg | † | Rauwolscine (Rauwolfia Vomitoria Root Extract) (std. Min 90% Alpha Yohimbine) | 3mg | † |

† Daily Value Not Established

**Other Ingredients:** Gelatin (capsules), Titanium Dioxide, FD&C Yellow #5, FD&C Yellow #6, Silicon Dioxide, Magnesium Stearate

8

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

25.     DEFENDANTS, and each of them, knew or in the exercise of reasonable care should have known that EGCG is a hepatotoxic phytochemical. The controversy over green tea extract and EGCG's role in causing acute liver injuries was beyond controversy by the time DEFENDANTS sold GORILLA PRODUCTS to Plaintiff. They marketed GORILLA PRODUCTS as safe, despite the fact that not only did GORILLA PRODUCTS contain a known hepatotoxin, but they contained a synthetic hepatotoxin at astronomical levels never before seen in other recalled supplements causing liver injury.

26.     On information and belief, at no time did DEFENDANTS undertake any type of scientific or clinical testing of GORILLA PRODUCTS to determine whether they were safe for human consumption.

27.     DEFENDANTS further marketed the GORILLA PRODUCTS as effective for weight loss by labeling them as "Fat Loss Formulas", that each of GORILLA PRODUCTS "Suppresses Appetite", and promise "Increased Fat Loss." Despite all of these and other warranties and representations that GORILLA PRODUCTS will help with weight loss, there is no evidence that Green Tea Extract or EGCG is effective in sustained and significant weight loss. On information and belief, DEFENDANTS have not even attempted to run clinical trials or research to determine for themselves whether Green Tea Extract, EGCG or GORILLA PRODUCTS are effective for weight loss.

28.     GORILLA PRODUCTS provided limited Warnings: "KEEP OUT OF REACH OF CHILDREN. This product should not be taken by individuals who are pregnant, nursing, have or suspect a medical condition, are taking any medications, or are under 18 years of age. Consult a physician before taking this or any other dietary supplement. Do not use this product with alcohol, or other medications. Store in a cool, dry place." DEFENDANTS did not provide any information to users, such as Plaintiff, that green tea extracts have been scientifically known to be hepatotoxic for susceptible patients with the potential danger of causing liver failure and death. An image of the side label of GORILLA PRODUCTS is reproduced below:

///

///

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

29.     If Plaintiff had been warned that green tea extracts can cause liver failure and potentially cause death, he would not have used GORILLA PRODUCTS, because the potential danger outweighed the uncertain benefits from taking green tea extracts.

## CAUSES OF ACTION

## COUNT I

## NEGLIGENCE

30.     Plaintiff incorporates by reference paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31.     At all times herein mentioned, DEFENDANTS had a duty to exercise reasonable care in the research, development, testing for safety, formulation, manufacture, scientific risk assessment, labeling, packaging, promotion, advertising, marketing, distribution, sale, and otherwise releasing into the stream of commerce GORILLA PRODUCTS.

32.     DEFENDANTS breached their duty of reasonable care to Plaintiff, in that they negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled and/or sold GORILLA PRODUCTS. Specifically, DEFENDANTS failed to

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

exercise reasonable care in ways which included, but were not limited to, one or more of the following particulars:

a. In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiff, herein, of the dangerous and defective characteristics of GORILLA PRODUCTS;

b. In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiff, of the propensity of GORILLA PRODUCTS to cause side effects, serious injury and death, specifically of the propensity to cause acute liver injuries such as liver failure;

c. In representing that GORILLA PRODUCTS were safe and effective for their intended use when, in fact, the products were unsafe for their intended use;

d. In failing to perform appropriate, reliable and valid pre-market testing for safety of GORILLA PRODUCTS;

e. In failing to perform appropriate, reliable and valid pre-market testing for safety, contamination, or purity of GORILLA PRODUCTS;

f. In failing to perform appropriate post-market surveillance of GORILLA PRODUCTS;

g. In failing to adequately and properly disclose to consumers and to Plaintiff, adverse events received from FDA by users of GORILLA PRODUCTS, as well as failing to disclose the French and Spanish recalls of green tea products, the recall of Hydroxycut in 2009, and the extensive medical and scientific literature on the hepatotoxicity of EGCG and green tea extract;

h. In failing to monitor or require sterile and good manufacturing processes of GORILLA PRODUCTS;

i. In failing to adequately represent the lack of research conducted on GORILLA PRODUCTS; and

j. In failing to perform appropriate post-market surveillance of GORILLA PRODUCTS.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

33.     DEFENDANTS knew or should have known that consumers, such as Plaintiff, would foreseeably suffer injury as a result of the DEFENDANTS' failure to exercise reasonable and ordinary care.

34.     As a direct and proximate result of the DEFENDANTS' carelessness and negligence, and of the unreasonably dangerous and defective characteristics of GORILLA PRODUCTS, Plaintiff, suffered severe and permanent injuries. Plaintiff, endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff, incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff, suffered severe pecuniary loss. Plaintiff, seeks actual and punitive damages from the DEFENDANTS as alleged herein. The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT II

## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

35.     Plaintiff incorporates by reference paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36.     At all times material to this action, DEFENDANTS were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary supplement GORILLA PRODUCTS, which were defective and unreasonably dangerous to users and/or consumers of the products, including Plaintiff.

37.     At all times material to this action, GORILLA PRODUCTS were manufactured, distributed, and/or sold by DEFENDANTS in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a.   When placed in the stream of commerce, GORILLA PRODUCTS were of a substandard condition in that they contained contaminants which were not intended to be a part of the product which rendered the products unreasonably dangerous when used for their intended and foreseeable purpose;

b.  When placed in the stream of commerce, GORILLA PRODUCTS were of a substandard condition in that they contained unintended or incorrect ratios or quantities of ingredients which rendered the products unreasonably dangerous when used for their intended and foreseeable purpose; and/or

c.  When placed in the stream of commerce, GORILLA PRODUCTS were of a substandard condition in that they contained contaminants which were not intended to be a part of the products which rendered the products unreasonably dangerous and which caused them to differ from other ostensibly identical units of the same product line.

38.     In light of the potential and actual risk of harm associated with the products' use, a reasonable consumer who had actual knowledge of this potential risk of harm would have expected that GORILLA PRODUCTS should not have been marketed in that condition.

39.     At all times relevant herein, DEFENDANTS knew that GORILLA PRODUCTS would be purchased by members of the general public and would be used by such purchasers without a prescription and without any inspections for defects, and who would rely upon the representations made by DEFENDANTS on the product label and in their marketing including public statements and promotional and sales materials.

40.     At all times material to this action, GORILLA PRODUCTS were expected to reach, and did reach, consumers in the State of California and throughout the world including Plaintiff, without substantial change in the condition in which they were sold.

41.     DEFENDANTS knew or should have known of the defective nature of GORILLA PRODUCTS but continued to develop, design, manufacture, package, formulate, inspect, label, distribute, market, promote, sell and otherwise release these products into the stream of commerce so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by their supplements, including liver injury and other health problems.

42.     At all times, Plaintiff used GORILLA PRODUCTS for their intended or reasonably foreseeable purpose.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

43.     As a direct and proximate result of the defective and unreasonably dangerous condition of GORILLA PRODUCTS and of their failure to perform safely, Plaintiff, suffered severe and permanent injuries. Plaintiff, endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff, incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff, suffered severe pecuniary loss. Plaintiff, seeks actual damages and treble and/or punitive damages from DEFENDANTS as alleged herein. The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT III

## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

44.     Plaintiff incorporates by reference paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.     At all times material to this action, DEFENDANTS were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary supplement GORILLA PRODUCTS, which were defective and unreasonably dangerous to users and/or consumers of the products, including Plaintiff.

46.     At all times material to this action, GORILLA PRODUCTS were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by DEFENDANTS in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:.

a.  When placed in the stream of commerce, GORILLA PRODUCTS were defectively designed, because they were unreasonably dangerous, not reasonably safe and fit for their intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the products, including Plaintiff, to risks which exceeded the benefits of the products;

b.  The products did not perform as safely as an ordinary consumer would have expected them to perform when used in an intended or reasonably foreseeable way;

14

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

c.  The products were insufficiently tested;

d.  The products caused harmful side effects that outweighed any potential utility;

e.  The products were more dangerous than other dietary supplements on the market; and

f.  The products were not accompanied by adequate labeling or instructions for use to fully apprise the public and consumers, including Plaintiff, of the potential risks and serious side effects associated with their use.

47.     In light of the potential and actual risk of harm associated with the products' use, a reasonable consumer who had actual knowledge of this potential risk of harm would have expected that GORILLA PRODUCTS should not have been marketed in the condition in which they were sold.

48.     There existed safer alternative designs, but DEFENDANTS, chose to market a more dangerous design.

49.     At all times relevant herein, DEFENDANTS knew that GORILLA PRODUCTS would be purchased by members of the general public and would be used by such purchasers without a prescription and without any inspections for defects, and would rely upon the representations made by DEFENDANTS on the products' label and in their marketing including public statements and promotional and sales materials.

50.     At all times material to this action, GORILLA PRODUCTS were expected to reach, and did reach, consumers in the State of California and throughout the United States, including Plaintiff, without substantial change in the condition in which they were sold.

51.     DEFENDANTS knew or should have known of the defective nature of GORILLA PRODUCTS but continued to develop, design, manufacture, package, formulate, inspect, label, distribute, market, promote, sell and otherwise release these products into the stream of commerce so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by their products, including liver conditions and other health problems.

52.     At all times, Plaintiff used GORILLA PRODUCTS for their intended or reasonably foreseeable purpose as dietary supplements.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

53.     As a direct and proximate result of the defective and unreasonably dangerous condition of GORILLA PRODUCTS and of their failure to perform safely, Plaintiff suffered severe and permanent injuries. Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff suffered severe pecuniary loss. The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT IV

## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

54.     Plaintiff incorporates by reference paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55.     At all times material to this action, DEFENDANTS were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary supplement GORILLA PRODUCTS, which were defective and unreasonably dangerous to users and/or consumers of the products, including Plaintiff.

56.     At all times material to this action, GORILLA PRODUCTS were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by DEFENDANTS in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a.  They contained warnings insufficient to alert consumers, including Plaintiff, herein, of the dangerous risks and reactions associated with GORILLA PRODUCTS, and the comparative severity, duration and the extent of the risks and reactions;

b.  They contained warnings insufficient to alert consumers, including Plaintiff, herein, of the propensity to cause a substantial increased risk of serious bodily harm, specifically including but not limited to hepatitis, liver dysfunction, liver failure or other liver injuries, even in those with no known history of liver problems;

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

c.  They contained warnings insufficient to alert consumers, including Plaintiff, of the dangerous drug-drug interactions and food-drug interactions; and

d.  The warnings that were given by the DEFENDANTS were not accurate, clear, and/or were ambiguous.

57.  Plaintiff could not have discovered any defect in GORILLA PRODUCTS through the exercise of reasonable care.

58.  DEFENDANTS, as a manufacturer, seller and/or distributor of GORILLA PRODUCTS, are held to the level of knowledge of an expert in the field.

59.  Plaintiff reasonably relied on the skill, superior knowledge, and judgment of DEFENDANTS.

60.  DEFENDANTS had a continuing duty to warn the Plaintiff of the dangers associated with the use of GORILLA PRODUCTS.

61.  Plaintiff consumed and used GORILLA PRODUCTS for their intended purpose as a dietary supplement.

62.  Had Plaintiff received adequate warnings regarding the risks of GORILLA PRODUCTS, Plaintiff would not have used any of them.

63.  As a direct and proximate result of the defective and inappropriate warnings and the unreasonably dangerous and defective characteristics of GORILLA PRODUCTS, Plaintiff suffered severe and permanent injuries. Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff suffered severe pecuniary loss.  The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT V

## BREACH OF IMPLIED WARRANTIES

64.  Plaintiff incorporates by reference paragraphs 1 through 63 of this Complaint as if fully set forth herein.

17

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

65. At all times, DEFENDANTS impliedly warranted that GORILLA PRODUCTS were safe, effective and fit for use by consumers and users, including Plaintiff, for their intended use, that they were of merchantable quality, that they did not produce dangerous side effects, and that they were adequately tested and fit for their intended purpose. Specifically, DEFENDANTS represented on GORILLA PRODUCTS' labels, inserts and through advertising that each of GORILLA PRODUCTS "suppresses appetite", leads to "increased fat loss", and causes "no jitters."

66. DEFENDANTS' representations regarding the character or quality of GORILLA PRODUCTS were false, in that GORILLA PRODUCTS were not safe, effective and fit for their intended purpose, were not of merchantable quality, and, in fact, caused serious and potentially lethal side effects to consumers, including Plaintiff, when taken in their recommended dose.

67. At the time of making these warranties, DEFENDANTS knew or should have known that, in fact, the representations and warranties were false, misleading, and untrue in that GORILLA PRODUCTS were not safe, effective and fit for use by consumers and users, including Plaintiff, for their intended use, that they were not of merchantable quality, that they did produce dangerous side effects, and that they were not adequately tested or fit for their intended purpose.

68. With such knowledge, DEFENDANTS, who owed a duty to the public and Plaintiff, concealed and suppressed such information from Plaintiff and the public.

69. DEFENDANTS made the foregoing representations and warranties without any reasonable ground for believing them to be true. In supplying the false information, DEFENDANTS failed to exercise reasonable care in labeling, promoting, and advertising GORILLA PRODUCTS. Moreover, DEFENDANTS intentionally deceived and defrauded Plaintiff and the public with intent to induce reliance on the representations and warranties.

70. Plaintiff reasonably relied, to his detriment, upon the DEFENDANTS' actions, concealment, and omissions in their representations and warranties concerning the risks, safety, and effectiveness of GORILLA PRODUCTS; specifically, that GORILLA PRODUCTS were safe and effective for human consumption.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

71.     Had Plaintiff, received adequate warnings regarding the risks, safety, and effectiveness of GORILLA PRODUCTS, he would not have used them.

72.     As a direct and proximate result of the DEFENDANTS' misrepresentations and concealment, and the unreasonably dangerous and defective characteristics of GORILLA PRODUCTS, Plaintiff suffered injuries as set forth above.

## COUNT VI

## BREACH OF EXPRESS WARRANTIES

73.     Plaintiff incorporates by reference paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74.     At all times relevant, DEFENDANTS expressly warranted that GORILLA PRODUCTS were safe, effective and fit for use by consumers and users, including Plaintiff, for their intended use, that they were of merchantable quality, that they did not produce dangerous side effects, that they were made from natural ingredients (i.e. green tea leaves), and that they were adequately tested and fit for their intended purpose. Specifically, DEFENDANTS represented on the bottle and through their advertising:

a.   GORILLA PRODUCTS are "Fat Loss Formulas";

b.   GORILLA PRODUCTS, each, "Suppresses Appetite";

c.   GORILLA PRODUCTS, each, "Increased Fat Loss";

d.   By taking GORILLA PRODUCTS, users could achieve "Optimal Fat Loss";

e.   GORILLA PRODUCTS "provide a substantially higher level of fat loss and appetite suppression."

f.   GORILLA PRODUCTS contain "Green Tea Extract ( . . . >50% EGCG)";

75.     At the time of making these and other warranties with respect to the safety, efficacy, testing, and characteristics of GORILLA PRODUCTS, DEFENDANTS knew or should have known that despite the above and other warranties alleged herein:

a.   In fact, GORILLA PRODUCTS will not and have not been shown to cause "Increased Fat Loss";

b.   GORILLA PRODUCTS will not and have not been shown to burn fat;

19

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

c.  GORILLA PRODUCTS do not suppress appetite;

d.  By taking GORILLA PRODUCTS, users could not achieve "Optimal Fat Loss";

e.  GORILLA PRODUCTS do not "provide a substantially higher level of fat loss and appetite suppression."

f.  GORILLA PRODUCTS contain EGCG which is not extracted from green tea leaves but rather is synthetic;

g.  GORILLA PRODUCTS will not help consumers or Plaintiff achieve their weight loss goals.

76.  At the time of making these warranties and other similar warranties, DEFENDANTS knew or should have known that, in fact, the representations and warranties were false, misleading, and untrue in that GORILLA PRODUCTS were not safe, effective and fit for use by consumers and users, including Plaintiff, for their intended use, that they were not of merchantable quality, that they did produce dangerous side effects, and that they were not adequately tested or fit for their intended purpose.

77.  Plaintiff reasonably relied upon the skill and judgment of DEFENDANTS and upon said express warranties in using GORILLA PRODUCTS. As a result, Plaintiff used GORILLA PRODUCTS for their intended purpose.

78.  DEFENDANTS breached said express warranties, in that, GORILLA PRODUCTS were not safe, effective and fit for their intended purpose, were not of merchantable quality, and in fact, caused serious and potentially lethal side effects to consumers, including Plaintiff, when taken in its recommended dose.

79.  Due to DEFENDANTS' wrongful conduct, as alleged herein, Plaintiff could not have known about the nature of the risks and side effects associated with GORILLA PRODUCTS until after he used them.

80.  As a direct and proximate result of the DEFENDANTS' misrepresentations and concealment, and the unreasonably dangerous and defective characteristics of GORILLA PRODUCTS, Plaintiff suffered injuries as set forth above.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as to all Counts and all DEFENDANTS as follows:

1.    Damages, including as applicable:

    a.  Past and future medical expenses;

    b.  Past and future loss of earnings (and/or profits); and

    c.  Other economic loss;

2.    Non-economic damages, including as applicable:

    a.  Compensation for physical pain and discomfort; and

    b.  Compensation for fright, nervousness, anxiety, worry, and apprehension.

3.    Pre-judgment interest.

4.    Post-judgment interest.

5.    Plaintiff's costs and expenses for litigation.

6.    Attorneys' fees.

7.    All other such relief as the Court deems necessary, just, and proper.

## **JURY DEMAND**

Plaintiff, ALPHONSO HABBABA, demands a trial by jury on all issues so triable.

DATED: March 11, 2024

ANDREWS & THORNTON

ANNE ANDREWS
SEAN T. HIGGINS
ROBERT S. SIKO
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Tel (949) 748-1000
Fax (949) 315-3540
aa@andrewsthornton.com
shiggins@andrewsthornton.com
rsiko@andrewsthornton.com

21

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Anne Andrews, Esq., SBN: 103280; Sean T. Higgins, Esq., CA SBN: 266888;<br>ANDREWS & THORNTON, 4701 Von Karman Ave, Suite 300, Newport Beach CA 92660<br><br>TELEPHONE NO.: (949) 748-1000    FAX NO.: (949) 315-3540<br>EMAIL ADDRESS: aandrews@andrewsthornton.com<br>ATTORNEY FOR *(Name):* Plaintiff, Alphonso Habbaba | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**03/11/2024** at 08:43:08 AM<br><br>Clerk of the Superior Court<br>By Eva Noriega,Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS: 330 W Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Hall of Justice

CASE NAME:
Alphonso Habbaba v. Gorilla Mind, LLC, and DOES 1-500,

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | CASE NUMBER: 37-2024-00011438-CU-PL-CTL |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $35,000) | [ ] Limited<br>(Amount<br>demanded is<br>$35,000 or less) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge Marcella O McLaughlin<br>DEPT.: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [X] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more
      issues that will be time-consuming to resolve       courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence       court
                                                         f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* 6
5. This case [ ] is   [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: March 11, 2024
Sean T. Higgins, Esq.
_____            ▶        _____
(TYPE OR PRINT NAME)                                  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to
  the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner
Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

| | |
|---|---|
| 1 | ANNE ANDREWS (Bar No. 103280) |
| | aandrews@andrewsthornton.com |
| 2 | SEAN T. HIGGINS (Bar No. 266888) |
| | shiggins@andrewsthornton.com |
| 3 | ROBERT S. SIKO (Bar No. 312856) |
| 4 | rsiko@andrewsthornton.com |

**ANNE ANDREWS** (Bar No. 103280)
aandrews@andrewsthornton.com
**SEAN T. HIGGINS** (Bar No. 266888)
shiggins@andrewsthornton.com
**ROBERT S. SIKO** (Bar No. 312856)
rsiko@andrewsthornton.com
**ANDREWS & THORNTON**
4701 Von Karman Ave, Suite 300
Newport Beach, California 92660
Telephone: (949) 748-1000
Facsimile: (949) 315-3540

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**03/13/2024** at 02:38:00 PM
Clerk of the Superior Court
By Christelle Tachon, Deputy Clerk

*Attorneys for Plaintiff*

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| **ALPHONSO HABBABA,** | **CASE NO.: 37-2024-00011438-CU-PL-CTL** |
| Plaintiff, | **PLAINTIFF'S NOTICE OF POSTING JURY FEES** |
| vs. | |
| **GORILLA MIND, LLC, and DOES 1-500,** | Assigned for all purposes to: Hon. Marcella O McLaughlin Dept: C-72 |
| Defendants. | Complaint Filed: 3/11/2024 Trial Date: none |

///

///

///

1

**PLAINTIFF'S NOTICE OF POSTING JURY FEES**

1

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORDS:**

2

PLEASE TAKE NOTICE that, pursuant to *Code of Civil Procedure §631(b)*, Plaintiff

3

Alphonso Habbaba hereby submits the Jury Fee Deposit in the amount of $150.00 in the above-

4

referenced matter.

5

Dated:   March 13, 2024                          **ANDREWS & THORNTON**

6

7

8

By: _____
     Anne Andrews

9

     Sean T. Higgins

10

     Robert S. Siko
     4701 Von Karman Ave., Suite 300

11

     Newport Beach, CA 92660
     Phone: (949) 748-1000

12

     Facsimile: (949) 315-3540
     aandrews@andrewsthornton.com

13

     shiggins@andrewsthornton.com
     rsiko@andrewsthornton.com

14

15

                                                  ***Attorneys for Plaintiff Adam Parmentier***

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**PLAINTIFF'S NOTICE OF POSTING JURY FEES**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS:    330 West Broadway

MAILING ADDRESS:    330 West Broadway

CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827

BRANCH NAME:    Central

PLAINTIFF(S):   Alphonso Habbaba

DEFENDANT(S): Gorilla Mind LLC

SHORT TITLE:   HABBABA VS GORILLA MIND LLC [IMAGED]

| **STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER:<br>37-2024-00011438-CU-PL-CTL |
|---|---|

Judge: Marcella O McLaughlin                Department: C-72

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)

☐ Mediation (private)

☐ Voluntary settlement conference (private)

☐ Neutral evaluation (private)

☐ Non-binding private arbitration

☐ Binding private arbitration

☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____               Date: _____

_____               _____

Name of Plaintiff                        Name of Defendant

_____               _____

Signature                            Signature

_____               _____

Name of Plaintiff's Attorney           Name of Defendant's Attorney

_____               _____

Signature                            Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: 03/12/2024          _____

                                  JUDGE OF THE SUPERIOR COURT



## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2024-00011438-CU-PL-CTL        CASE TITLE: Habbaba vs Gorilla Mind LLC [IMAGED]

**NOTICE**: All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
   (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
   (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and*
   (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

### Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

### Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:**  A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:**  A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:**  A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection:  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7072 |

| PLAINTIFF(S) / PETITIONER(S):   Alphonso Habbaba |
|---|
| DEFENDANT(S) / RESPONDENT(S):   Gorilla Mind LLC |
| |
| HABBABA VS GORILLA MIND LLC [IMAGED] |

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER:<br>37-2024-00011438-CU-PL-CTL |
|---|---|

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Marcella O McLaughlin                                     Department: C-72

## COMPLAINT/PETITION FILED: 03/11/2024

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 08/23/2024 | 01:30 pm | C-72 | Marcella O McLaughlin |

**Case Management Conferences (CMCs) may be conducted virtually or in person.** Anyone wishing to appear remotely should visit the "Appearing for Hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC.  (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint.  An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint.  A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed.  If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6).  If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date.  See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged.  The court encourages and expects the parties to consider using ADR options prior to the CMC.  The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.